IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                                      CRIMINAL NO. 1:03cr101WJG-JMR-1
                                                            CIVIL ACTION NO. 1:05cv261WJG-JMR

JAMES BLACKWELL, JR.
a/k/a JIMMY

O R D E R

This cause comes before the Court on Defendant James Blackwell, Jr.'s, *pro se* motion to vacate and set aside or correct his previously imposed sentence [57-1] pursuant to 28 U.S.C. § 2255.

According to *habeas corpus* petition, Blackwell contends that his counsel, Doyle L. Coats, was ineffective for allegedly failing to demonstrate that the drug transactions between his co-defendants Allison Blackwell [Allison] and Cliff Milligan and the undercover agent were not reasonably foreseeable to Blackwell. (Ct. R., Doc. 57, p. 6.) He further alleges that Coats did not object at sentencing to the alleged lack of evidence to establish a nexus between Blackwell and the firearm which Allison possessed to avoid the two level firearm enhancement applied to Blackwell's sentence under United States Sentencing Guidelines [U.S.S.G.] § 2D1.1(b)(1). (*Id.*) He claims that he was held accountable for fact finding made by the judge which imposed sentencing enhancements, and that as a result his constitutional rights were violated because a

jury should have determined his offense conduct. (*Id*., p. 7.) He contends that his attorney should have objected to the use of judge-found facts in determining his sentence. (*Id*.)

Blackwell was indicted on November 19, 2003, in an eight-count indictment along with Allison and Milligan, which charges Blackwell in Count 1 with conspiracy to possess with intent to distribute a mixture or substance containing a detectable amount of 3,4 methylene-dioxymethamphetamine [MDMA], commonly known as "ecstasy;" in Count 2 with aiding and abetting the possession with intent to distribute 25 dosage units of MDMA on or about September 17, 2003; in Count 4 with possession with intent to distribute 5 dosage units of MDMA on or about September 22, 2003; and with a criminal forfeiture in Count 8. (Ct. R., Doc. 1, pp. 1-5.) Count 2 of the indictment charges Blackwell with aiding and abetting his co-defendants and others with possession with intent to distribute approximately 25 dosage units of a mixture or substance containing ecstasy. (*Id*., p. 2.) In Count 4, Blackwell is charged with possession with intent to distribute approximately 5 dosage units of a mixture or substance containing ecstasy on or about September 22, 2003. (*Id*.) Blackwell is also charged in Count 8, the criminal forfeiture count. (*Id*., p. 4.)

Blackwell pleaded guilty to Count 4 of the indictment on February 9, 2004, pursuant to a Memorandum of Understanding [MOU]. (Ct. R., Docs. 44-45.) He was sentenced on May 4, 2004, to a term of 63 months imprisonment followed by 3 years of supervised release and a special assessment of $100. (Ct. R., Doc. 46.) Counts 1, 2, and 8 of the indictment were dismissed at sentencing on motion of the United States of America [United States]. (*Id*.) As part of the plea agreement, Blackwell waived his right to appeal and to challenge his conviction under 28 U.S.C. § 2255. (Ct. R., Doc. 44, pp. 4-5.) Blackwell's co-defendants also entered guilty

pleas; Milligan pleaded guilty of Count 1 of the indictment on February 2, 2004; and Allison pleaded guilty to Count 7 of the indictment on the same date. (Ct. R., Docs. 42, 43.)

The United States maintains that the *habeas* petition was untimely filed on May 25, 2005, more than one year after Blackwell's judgment was final. (United States' Resp., p. 2.) In Blackwell's rebuttal, he argues that the motion was timely submitted to legal mail at Forrest City, Arkansas, but the wrong address for the court was placed on the envelope. (Ct. R., Doc. 64, Appendix.) The envelope, postmarked May 3, 2005, was addressed to the court at its former address and returned to sender. (*Id.*) He then re-mailed the petition. (*Id.*)

The United States also contends that Coats was not ineffective because his performance did not fall within the standards of establishing ineffective assistance of counsel. (*Id.*, pp. 3-4.) In addition, the United States asserts that the U.S.S.G. were fully applicable at the time of Blackwell's sentencing and further asserts that the decision in *United States v. Booker*[1] is not retroactively applied to cases that are final. (*Id.*, p. 4.)

According to an affidavit filed by Coats, he was appointed to represent Blackwell on December 11, 2003. (Ct. R., Doc. 61, Coats Aff., p. 1.) Coats avers that on December 13, 2003, Blackwell informed him that he was in fact of guilty to Count 4 of the indictment and had knowledge of and participated in Count 2 of the indictment. (*Id.*, p. 2.) On December 15, 2003, Blackwell and Coats appeared before Chief Magistrate Judge John M. Roper for Blackwell's arraignment and detention hearing. (*Id.*; Ct. R., Doc. 25.) During the arraignment the United States Probation Office [USPO] informed the court that Blackwell was on felony probation from Louisiana's 22nd Judicial Court and a detainer was placed on Blackwell by St. Tammany Parish,

---

[1]*United States v. Booker,* 543 U.S. 220 (2005).

Louisiana for escape at the time of his arrest.  (Ct. R., Doc. 61, p. 2.)  As a result, Blackwell could not be released on bond at the hearing.  (*Id*.)

Coats met with Blackwell on January 22, 2004, after receiving and reviewing the discovery in the case.  (*Id*.)  He met with Blackwell to discuss the possible defenses in the case, and reviewed the proposed MOU with Blackwell.  (*Id*., p. 3.)  Blackwell indicated that he understood the terms of the plea and wished to enter a guilty plea to Count 4 of the indictment.  (*Id*.)

Coats stated that Blackwell admitted the allegations set out in Count 4 of the indictment during the plea hearing and informed the Court that he wanted to change his plea to guilty to the charges contained in Count 4 of the indictment in exchange for the dismissal of the other counts contained in the indictment.  (*Id*.)  Coats reviewed the presentence investigation report on Blackwell on March 23, 2004, and met with his client to review the report and the facts of the case, along with the sentencing guidelines and possible objections.  (*Id*., p. 4.)  Formal objections to the presentence report were prepared and reviewed with Blackwell on March 26, 2004.  (*Id*.)

During the sentencing hearing, Blackwell stated that he reviewed the presentence report with his attorney.  (Ct. R., Doc. 60, pp. 3, 5.)  One of the challenges to the report was to the a two-level enhancement based on possession of a firearm by one of Blackwell's co-defendants.  (*Id*.)  Blackwell testified during the sentencing hearing that Allison is his half sister.  (*Id*., p. 6.)  He accompanied Allison to an arranged sale of 25 dosage units which Allison set up.  (*Id*.)  He stated that he did not remain in the room during the negotiations and had driven a separate vehicle to the destination.  (*Id*., p. 7.)  Accordingly, he claims he had no knowledge of a firearm at that sale.  (*Id*.)  Blackwell also contended he did not know Milligan or anything about any

arrangements Allison may have had with Milligan regarding the sale of drugs. (*Id.*, p. 8.) He claims he did not see a gun on Allison at any time. (*Id.*, p. 10.)

John Bordage, one of the case agents and an employee of the Waveland Police Department, testified that he is familiar with Blackwell. (*Id.*, p. 12.) He testified that there was an audio and video tape of the drug transaction where Blackwell describes having accompanied Allison to the sale and had denied seeing a gun at the transaction. (*Id.*; Exhs. G-1 & 2.) Blackwell was present at the drug transaction as evidenced in the tape. (*Id.*) The video also establishes that Allison had a firearm which was displayed during the transaction. (*Id.*, p. 13.) One portion of the video tape shows Allison taking the gun, placing it into the back waistband of her pants, and moving around the room, coming within two feet of Blackwell, who is sitting on the floor. (*Id.*) The agent testified that Blackwell could easily have seen the gun in Allison's waistband. (*Id.*, p. 14.)

Allison also discussed future sales with the undercover agent when Blackwell was present, according to the agent's testimony. (*Id.*, p. 15; Exh. G-2.) Agent Sean Buchanan who was present in the room at the time of the transaction stated that Blackwell left the room about five minutes after the pair arrived at the room to conduct the transaction. (*Id.*, p. 17.) He further stated that when Blackwell reentered the room, Allison still had the gun under her leg. (*Id.*, p. 18.) The price for the drugs was negotiated in Blackwell's presence. (*Id.*) Although a future drug transaction was discussed in Blackwell's presence according to the tapes, Blackwell was not present at the future transaction and there was no evidence that Blackwell materially profited from the transaction. (*Id.*, p. 19.) The Assistant United States Attorney [AUSA] questioned the agent regarding whether Blackwell and Coats had reviewed the tapes prior to the sentencing

hearing, and the agent stated that Coats reviewed the tapes with Doug Peterson of the USPO. (*Id.*, p. 20.)

After hearing the testimony and viewing the evidence, the Court overrruled the objection regarding the firearm. (*Id.*, p. 21.) The Court determined that Blackwell was aware of the presence of a firearm, and did nothing to remove himself from the situation. (*Id.*)

The Court also determined that there was a criminal plan involved in the drug transactions, and that Blackwell would be held responsible under the sentencing guidelines for a jointly undertaken criminal activity. (*Id.*, p. 22.) Blackwell stated during the hearing that he did not have anything to do with any drug transactions other than the incident to which he pleaded guilty. (*Id.*)

Blackwell contends that he had no knowledge of the drug transactions on September 17, 19, and 25, 2003, and those transactions were not reasonably foreseeable by him. (Ct. R., Doc. 58, p. 5.) He claims that Coats should have demonstrated to the Court that his sentence should be based only on the amount of drugs purchased by the confidential source on September 15, 2003, which was three tablets of ecstacy. (*Id.*) Blackwell claims that Coats should have objected when the Court did not follow the definition of relevant conduct as outlined in U.S.S.G. 1B1.3. (*Id.*) He also claims that Coats was ineffective because he did not perfect a direct appeal in this case, especially after *Blakely v. Washington*[2] was decided by the United States Supreme Court. (*Id.*, pp. 5-6.)

Blackwell asserts that Agent Buchanan and the confidential source went to Room 103 of the Village Inn in Bay St. Louis, Mississippi, on September 17, 2003, to wait for Allison, who

---

[2]542 U.S. 296 (2004).

was delivering for purchase 25 tablets of ecstacy.  (*Id*., p. 8.)  He claims that he entered the room with Allison and sat on the floor.  (*Id*.)  After about five minutes he left the room, and at that time Allison withdrew the pistol from behind her back and placed it under her leg.  (*Id*.)  He claims his mere presence was not sufficient to convict him of assisting Allison in the possession with intent to distribute 25 tablets of ecstacy.  (*Id*., p. 9.)

      Blackwell claims that his only involvement in the September 17th transaction was to introduce the confidential informant, whom Blackwell thought was a casual drug user, to Allison.  (*Id*., p. 12.)  He claims that it is not reasonably foreseeable that one small sale would result in a series of much larger sales in the future.  (*Id*., p. 13.)  He further contends that he did not profit financially from the subsequent sales, was not aware that future sales would ensue and did not participate in the future sales activity.  (*Id*.)  Accordingly, he claims he should not have been sentenced for the full amount of ecstacy without evidence that the later sales were a jointly undertaken criminal activity.  (*Id*.)

      Blackwell further contends that he had no knowledge of or access to the weapon Allison possessed at the September 17, 2003, drug sale.  (*Id*., pp. 15-16.)  He claims he left the room before Allison displayed the gun.  (*Id*., p. 16.)  He contends that he was never in possession of the gun, and that his mere presence around the gun was not enough to uphold the two-level enhancement of his sentence regarding the gun.  (*Id*., p. 17.)

      The United States contends that Blackwell explicitly waived his right to seek post-conviction relief in his MOU.  (Ct. R., Doc. 62, p. 2.)  The motion was untimely filed, according to the United States, because Blackwell was sentenced May 4, 2004, and his judgment became final on May 14, 2004, when his time for filing an appeal expired.  (*Id*.)  Because the motion to

vacate was filed on May 25, 2005, the United States maintains that the motion is not timely.  (*Id*.) The United States further maintains that Coats was not ineffective; he raised each of Blackwell's claims with the Court, although he was unsuccessful.  (*Id*., p. 4.)  In addition, the decision in *Booker* does not have retroactive effects on judgments which were final at the time of its decision, according to the United States.  (*Id.*)  The United States argues that at the time of Blackwell's sentencing neither *Blakely* not *Booker* had been decided; and that the Court was required to make factual findings by a preponderance of the evidence standard.  (*Id*., p. 4.)

I.      Timeliness of the Petition

The Antiterrorism and Effective Death Penalty Act [AEDPA]'s statute of limitations applies to all *habeas* petitions filed after the AEDPA went into effect.  *United States v. Flores*, 135 F.3d 1000 (5th Cir. 1998), *cert. denied* 525 U.S. 1091 (1999), *reh'g denied* 525 U.S. 1188. Under 28 U.S.C. § 2255, the one-year statute of limitations shall run from the latest of –

   (1)  the date on which the judgment of conviction becomes final.

   (2) the date on which the impediment to making a motion created by
   governmental action in violation of the Constitution or laws of the United States
   is removed, if the movant was prevented from making a motion by such
   governmental action;

   (3) the date on which the right asserted was initially recognized by the Supreme
   Court, if that right has been newly recognized by the Supreme Court and made
   retroactively applicable to cases on collateral review; or

   (4) the date on which the facts supporting the claim or claims presented could
   have been discovered through the exercise of due diligence.

"[A] conviction becomes final when a defendant's options for further direct review are foreclosed, whether or not those options have been pursued."  *United States v. Thomas*, 203 F.3d 350, 355 (5th Cir. 2000).  Ordinarily, the instant petition should have been filed by no later than

May 3, 2005, to be considered timely under the AEDPA. *United States v. Gamble*, 208 F.3d 536 (5th Cir. 2000).

The statute of limitations is tolled from the date a properly filed motion for collateral relief is filed until a decision denying collateral relief is finally reviewed. *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). A "properly filed application" is one which conforms to a state's procedural filing requirements. *Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir. 1999), *reh'g en banc denied* 196 F.3d 1259.

Under the "mailbox rule," the date of filing for *pro se* prisoners is set to the date the inmate places the legal paper in the hands of prison officials for mailing. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g & reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *& cert. denied,* 529 U.S. 1057 (2000) (citing *Spotville v. Cain,* 149 F.3d 374, 376-8 (5th Cir. 1998)). Under the mailbox rule, the Court finds that Blackwell's habeas petition was timely filed on May 3, 2003, when he delivered it to prison officials for mailing. *Coleman,* 184 F.3d at 401.

II.     Waiver

As part of the plea bargain agreement with the United States, Blackwell waived the right to appeal his conviction and to seek post-conviction relief in the MOU. (Ct. R., Doc. 44, p. 4.) The right to appeal a criminal conviction is a statutory right, not a constitutional right. *Abney v. United States*, 431 U.S. 651, 656 (1977). Plea bargain agreements are "contractual in nature and are to be construed accordingly." *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998). Statutory rights, including the right to appeal, can be waived as part of an informed and voluntary plea, and waiver of post-conviction relief will bar such relief under the proper circumstances. *See United States v. Melancon,* 972 F.2d 566, 567 (5th Cir. 1992); *United States v. White*, 307

F.3d 336, 339 (5th Cir. 2002), *cert. denied* 522 U.S. 882.  A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant.  *United States v. Smallwood,* 920 F.2d 1231, 1240 (5th Cir. 1991), *cert. denied* 501 U.S. 1238.

In certain circumstances, a waiver may not apply to collateral attacks based upon ineffective assistance of counsel relating to the voluntariness of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), *cert. denied* 531 U.S. 919; *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983).  Blackwell must show the following to establish ineffective assistance of counsel:  (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 689-94 (1984).  In cases involving a guilty plea, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).  In other words, Blackwell "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Glinsey*, 209 F.3d at 392.  The Court will examine whether Blackwell's claims of ineffective assistance of counsel merit consideration of his arguments in this petition.

III.    Claim of Ineffective Assistance of Counsel

A defendant can waive his right to file a motion pursuant to 28 U.S.C. § 2255, however, that waiver may not apply to a claim of ineffective assistance of counsel.  *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994.)  Blackwell's claim of ineffective assistance of counsel can be proven by showing:  (1) that Coats' performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687; *United States v. Seyfert*, 67 F.3d 544, 547

(5th Cir. 1995).  A petitioner must meet both prongs of the *Strickland* test to succeed.  *See Strickland*, 466 U.S. at 687.  Prejudice is proven in a non-capital sentencing proceeding when a defendant establishes that, but for the deficient performance of counsel, his sentence would have been significantly less harsh.  *United States v. Acklen,* 47 F.3d 739, 742 (5th Cir. 1995).  In determining whether a counsel's performance was deficient, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689.

As long as the defendant understood the length of time he might possibly receive in his sentence he was fully aware of his plea consequences and his guilty plea was not unknowing or involuntarily, even if he received erroneous advice of counsel regarding the sentence likely to be imposed.  *United States v. Santa Lucia,* 991 F.2d 179, 180 (5th Cir. 1993).  Blackwell claims that Coats should have objected to the use of relevant conduct in the calculation of his sentence on the grounds that use of the guideline was unconstitutional.  (Ct. R., Doc. 58, pp. 19-22.)

"In the first place, consideration of relevant conduct in the selection of a defendant's sentence within the range of permissible punishment established by Congress for his offense of conviction is not the equivalent of prosecuting the defendant for an offense additional to his offense of conviction . . ..  Thus, if the government promises not to prosecute a defendant for certain offenses in exchange for a guilty plea to a different offense, the sentencing court may nevertheless consider the relevant but uncharged conduct as long as the punishment selected is within the statutory range for the offense of conviction."  *United States v. McCaskey,* 9 F.3d 368, 377 (5th Cir. 1993) (internal quotation marks omitted), *cert. denied,* 511 U.S. 1042 (1994).

Blackwell contends that his plea was not informed or knowing because he did not realize that *Blakely* would be decided subsequent to his plea agreement. (Ct. R., Doc. 64, p. 5.) "Generally speaking, federal *habeas corpus* petitioners may not rely on new rules of criminal procedure decided after their convictions have become final on direct appeal." *United States v. Gentry,* 432 F.3d 600, 602 (5th Cir. 2005) (*citing Schriro v. Summerlin,* 542 U.S. 348 (2004)). Because this case already was final at the time that the rule in *Booker* was announced, and *Booker* is not retroactively applicable on collateral review, Blackwell's arguments to the contrary are without merit. Consequently, the Court finds no reason to grant Blackwell's motion to vacate based on the assertions contained in the petition. The *Blakely/Booker* line of cases does not apply retroactively to cases on collateral review. *United States v. Gentry,* 432 F.3d 600, 605 (5th Cir.2005); *In re Elwood,* 408 F.3d 211, 212-13 (5th Cir.2005) (*per curiam*); *United States v. Edwards*, 442 F.3d 258, 268 (5th Cir. 2006). Furthermore, the Sixth Amendment does not prohibit a sentencing judge from finding all the facts relevant to sentencing. *See United States v. Mares,* 402 F.3d 511, 519 (5th Cir.), *cert. denied,*___ U.S. ___, 126 S.Ct. 43 (2005); *United States v. Lopez-Urbina,* 434 F.3d 750, 759 (5th Cir. 2005); *United States v. Alonzo,* 435 F.3d 551, 553 (5th Cir. 2006).

Moreover, the evidence indicates that Blackwell's waiver of appeal was both knowing and voluntary. His signed plea agreement contains an express waiver of his right to appeal or seek relief under section 2255. (Ct. R., Doc. 44.) During his plea hearing, the Court summarized the indictment, noted the mandatory minimum and maximum terms of imprisonment under the statute, and specifically questioned Blackwell about his satisfaction with Coats' representation and the time he spent with Blackwell, and about his appeal waiver. (Ct. R., Doc. 59, pp. 5-11.)

Blackwell informed the Court that he reviewed the MOU and understood that he was waiving his right to appeal his sentence under any circumstances. (Ct. R., Doc. 59, pp. 11-14.) Blackwell's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 73-4 (1977).

Blackwell has not shown that Coat's performance in counseling Blackwell to accept a plea agreement that included a waiver of appeal rights was deficient. There is no evidence that Coats pressured him to accept the plea agreement, because Blackwell responded negatively when asked if anyone threatened, forced or coerced him to enter a plea of guilty and he repeatedly answered in the affirmative that he was pleading guilty voluntarily. (Ct. R., Doc. 59, pp. 10-12.)

Blackwell confirmed during his plea colloquy that he understood that he faced a statutory maximum sentence of 20 years, a $1,000,000 fine and a period of supervised released of at least three years on the charge to which he pleaded guilty. (Ct. R., Docs. 45; 59, pp. 10-11.) The Court concludes that Blackwell produced no evidence to establish that Coats rendered ineffective assistance regarding Blackwell's potential sentence. *See United States v. White*, 307 F.3d 336, 343-4 (5th Cir. 2002). There was no constitutional error in his sentence, because he did not receive a sentence in excess of 20 years and has produced no evidence of an error of law or fact which would render the proceeding invalid. *See United States v. Addonizio*, 442 U.S. 178, 185-6 (1979).

The Court recognizes the fact that Coats successfully negotiated a plea agreement under which Blackwell received substantial benefits indicating that his performance was not deficient. As a result of the plea agreement, the United States dropped three counts of the indictment, and

Blackwell's offense level was reduced by three levels based on his acceptance of responsibility as evidenced by his decision to enter a guilty plea. (Ct. R., Doc. 60, p. 24.) The Court concludes that Blackwell produced no evidence to establish that he did not voluntarily enter his guilty plea, and likewise produced no evidence that Coat's counseling Blackwell to accept this plea agreement falls outside the range of competence required of a defense attorney under the deferential *Strickland* standard. *See White*, 307 F.3d at 343.

In addition, to establish grounds for relief on claims of ineffective assistance of counsel in connection with Blackwell's arguments, he must establish that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688; *see Magnum v. Hargett,* 67 F.3d 80, 86 (5th Cir. 1995). Unfortunately for Blackwell, the record establishes anything but this standard. The Court finds no merit to Blackwell's attempt to attack Coats' professional competence and further finds no reason to conclude that "but for" Coats' performance and advice Blackwell was convicted of a crime for which he had no involvement.

The Court concludes that Blackwell fails to meet the first prong of *Strickland* in this claim, and has not shown that Coats' performance was deficient. In light of these findings, the Court fails to find any evidence in the record supporting Blackwell's contentions regarding Coats' performance. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *United States v. Shaid*, 937 F.2d 228 (5th Cir. 1991), *cert. denied* 502 U.S. 1076 (1992). The Court concludes that there are no valid grounds for *habeas* relief in Blackwell's challenge. It is therefore,

ORDERED AND ADJUDGED that Blackwell's motion to vacate [57-1] the previously imposed sentence be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that this cause be dismissed with prejudice.

SO ORDERED AND ADJUDGED this the 27th day of September, 2006.

                                      *Walter J. Gex III*
                         UNITED STATES SENIOR DISTRICT JUDGE